# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ELLIOT KATZ,

        Plaintiff,

-v-

MELI INVESTMENTS, LLC, et al.,

        Defendants.

Case No. 3:08-cv-299

Judge Thomas M. Rose

---

## ENTRY AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS (Doc. #8) AND TERMINATING THIS CASE

---

This matter arises from a business relationship between Plaintiff Elliot Katz ("Katz") and Defendant Meli Investments, LLC ("Meli"). At all times relevant, Meli, as an LLC, had two members: Defendant Marc Eisenmann ("Eisenmann") and Ira Landsman ("Landsman"). The business relationship was in regard to the Canal Street Property located in New Orleans, Louisiana.

Katz has brought seven causes of action. His First Cause of Action is against Meli for breach of contract. His Second Cause of Action is against Eisenmann for breach of contract. His Third Cause of Action is against Meli for unjust enrichment. His Fourth Cause of Action is against both Meli and Eisenmann for fraud. His Fifth Cause of Action is against Meli for conversion. His Sixth Cause of Action is against Meli and Eisenmann for promissory estoppel. Katz's Seventh Cause of Action is for an accounting of Meli.

Katz's Complaint was originally filed in the Court of Common Pleas, Montgomery County, Ohio, on July 21, 2008. It was subsequently removed to this Court based upon this Court having diversity jurisdiction.

Now before the Court is Meli and Eisenmann's (collectively the "Defendants'") Motion To Dismiss for lack of personal jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(2). This Motion is now fully briefed and ripe for decision. The relevant legal provisions and relevant jurisdictional evidence will first be set forth followed by an analysis of the Motion.

## RELEVANT LEGAL PROVISIONS

When a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is made, the Plaintiff, Katz in this case, has the burden of proving that jurisdiction exists. *Burnshire Development, LLC v. Cliffs Reduced Iron* Corp., 198 Fed. App'x 425, 429 (6th Cir. 2006) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996)). As a part of the burden of proof, the Plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss.

When an evidentiary hearing is held, the Plaintiff must establish jurisdiction by a preponderance of the evidence. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). When there is no evidentiary hearing, as is the case here, the plaintiff must make only a prima facie showing and the pleading and affidavits, when in conflict, are viewed in a light most favorable to the Plaintiff. *Burnshire*, 198 Fed. App'x at 429.

The Sixth Circuit applies a two-part test to determine if personal jurisdiction exists. *Logan Farms v. HBH, Inc. DE*, 282 F. Supp.2d 776, 795 (S.D. Ohio 2003). First, the federal court must determine if the law of the forum state, Ohio in this case, provides for personal jurisdiction. *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co.*, Ltd., 91 F.3d 790, 793 (6th Cir. 1996). If so, the federal court must then determine if the personal jurisdiction comports with due process. *Id.* The relevant jurisdictional evidence will next be set forth

followed by an analysis of personal jurisdiction under Ohio law and, if necessary, a determination if personal jurisdiction comports with the Due Process Clause of the U.S. Constitution.

## RELEVANT JURISDICTIONAL EVIDENCE

Katz's Verified Complaint arises from an alleged business transaction regarding real estate located in New Orleans, Louisiana. Katz provided a $70,000 deposit in connection with the purchase of the real estate known as the Canal Street Property. (Verified Complaint ("V. Compl.") ¶¶ 10, 25.) Katz has requested that this deposit be returned to him and it has not been returned. (V. Compl. ¶ 33.)

### Katz

Katz is now a resident of Montgomery County, Ohio. (Id. ¶ 1.) Further, Katz resided in Montgomery County, Ohio, during all factual circumstances surrounding this matter. (Id.)

### Meli

Meli is a Limited Liability Company formed on or about March 7, 2006. (Id. ¶ 2.) Meli is organized and exists under the laws of the State of Louisiana with its principle "domicile address" in Metairie, Louisiana. (Id.) Eisenmann and Landsman are the only two members of Meli. (Declaration of Marc Eisenmann ("Eisenmann Decl.") ¶ 2 Sept. 24, 2008.)

Meli has never had any offices, officers, employees, bank accounts, real or personal property, or any other assets located in the State of Ohio. (Id.) In addition, Meli does not send agents or employees into Ohio to solicit business and does not advertise that it does business in Ohio. (Id.)

### Landsman

Landsman is an individual who is a resident of New York. He is not a named defendant in this action. (V. Compl.)

Landsman and Katz were long-time friends having met through mutual acquaintances in New York City. (Declaration of Ira Landsman ("Landsman Decl.") ¶ 3 Sept. 24, 2008.) Over the years, Landsman and Katz routinely discussed prospective business transactions. (Id.) In July of 2006, Landsman and Katz discussed one such potential business transaction over the telephone. (Landsman Decl. ¶ 4.) This prospective business transaction entailed the purchase and renovation of a commercial building in New Orleans, known as the Canal Street Property (the "Project"). (Landsman Decl. ¶ 4; Compl. ¶ 10.)

Landsman did not travel to Ohio to meet with Katz to discuss the Project. (Landsman Decl. ¶ 9.) Further, Landsman has not resided in Ohio, has not owned real estate in Ohio and has never had a bank account in Ohio. (Id.)

### Eisenmann

Eisenmann is an individual who is a resident of Ft. Lauderdale, Florida. (V. Compl. ¶ 4.) He has not traveled to Ohio to meet with Katz to discuss the Project. (Eisenmann Decl. ¶ 3.) He has never resided in Ohio or owned real property in Ohio. (Id.) Finally, Eisenmann does not have any bank accounts in Ohio. (Id.)

### Telephone Numbers

The Parties' Briefs on Defendants' Motion To Dismiss discuss telephone calls. Katz's cell phone number was, at all times relevant, (914) 671-0181. (Declaration of Elliot Katz ("Katz Decl.") ¶ 4 Oct. 17, 2008.) Katz kept the same cell phone number when he moved from New York to Ohio. (Id.) Katz's telephone number in his home in Dayton was, at all times relevant,

(937) 223-1261. (Id.)

Eisenmann's cell phone number at all times relevant was (210) 344-3691. (Id. ¶ 6.) This is a New Jersey telephone number that Eisenmann took with him when he moved to Florida. (Id.)

Landsman's cell phone number at all times relevant was (917) 549-9338. (Id. ¶ 7.) Landsman's home phone number at all times relevant was (212) 663-9236. (Id.)

Katz has provided telephone call records showing that both Eisenmann and Landsman called him on his home telephone number, (937) 223-1261. (Katz Decl. ¶ 5.) The records indicate a total of 89 calls made from Landsman's cell phone to Katz's home between October 1, 2006, and March 3, 2007. (Id. Ex. A1.) The records also indicate one call made from Landsman's home phone to Katz's home phone on December 2, 2006. (Id. Ex. A2.) The records further indicate a total of eight (8) calls made from Eisenmann's cell phone to Katz's home phone between December 21, 2006 and February 11, 2007. Finally, Katz has submitted telephone records showing several calls made from his home telephone to Landsman's and Eisenmann's cell phones. (Id. Ex. A4.)

Events Leading Up To this Lawsuit

In August of 2006, Landsman and Katz met in New Orleans to negotiate the business transaction involving the Canal Street Property. (Landsman Decl. ¶ 5.) While in New Orleans, Katz made the decision to enter into an agreement to purchase and renovate the Canal Street Property. (Id.) Meli wanted Katz to participate because of Katz's extensive construction experience in commercial projects. (Id.)

According to Landsman, he and Katz met in Louisiana on "numerous occasions." (Id. ¶

6.) Landsman assisted Katz in locating a Louisiana real estate broker to assist in the search for a home and assisted Katz in hand-delivering Katz's application for a building contractor's license in Louisiana. (Id. ¶¶ 5, 6.)

In January of 2007, Katz, Landsman and Eisenmann formed Mile Development, LLC ("Mile"), a Louisiana limited liability company. (Id. ¶ 6.) Mile was formed as a result of Katz's involvement in the Project. (Id.)

In early February of 2007, Katz provided a $70,000 earnest money deposit in connection with the Project. (Landsman Decl. ¶ 8.) These funds were deposited in Meli's bank account in New Orleans, Louisiana. (Id.) The funds were transferred from Katz's account in Ohio. (V. Compl. ¶ 26.)

Meli expected Katz to move to Louisiana to oversee the construction aspects of the Project. (Second Declaration of Ira Landsman ("Second Landsman Decl.") ¶ 5 Nov. 3, 2008.) Katz considered renting a home in New Orleans for the construction phase of the Project and had no plans to sell his home in Dayton. (Katz Decl. ¶¶ 12, 13.) Katz intended to spend as much time as necessary in New Orleans but would spend as much time as possible working on the Project from his home in Dayton. (Id. ¶ 14.)

Less than one week before the purchase of the Canal Street Property was to close, Katz decided to back out. (Landsman Decl. ¶ 8.) When Meli did not return the earnest money deposit, Katz brought the instant lawsuit. (Id.)

## PERSONAL JURISDICTION UNDER OHIO LAW

The Sixth Circuit has explained that there are two kinds of jurisdiction that can be exercised, general jurisdiction and specific jurisdiction. *Brunner v. Hampson*, 441 F.3d 457, 463

(6th Cir. 2006). General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," such that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Youn*, 324 F.3d at 418. Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id.*

Ohio does not recognize general jurisdiction over non residents. *Signom v. Schenck Fuels, Inc.*, No. C-3-07-037, 2007 WL 1726492 at *3 (S.D. Ohio June 13, 2007). In Ohio, jurisdictional analysis over non residents, such as the Defendants in this case, is based only upon specific jurisdiction that may be available under Ohio law. *Id.*

Specific jurisdiction under Ohio law is provided by Ohio's long-arm statute, Ohio Rev. Code § 2307.382. Ohio's long-arm statute enumerates nine (9) categories of conduct that subject an entity to personal jurisdiction in Ohio if a cause of action arises out of such conduct. *Shaker Construction Group, LLC v. Schilling*, No. 1:08cv278, 2008 WL 4346777 at *2 (S.D. Ohio Sept. 18, 2008). In this case, Katz claims specific jurisdiction under one of these categories - section 2307.382(A)(1). Section 2307.382(A)(1) is as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>   (1) Transacting any business in this state;
>
>    ….

## Section (A)(1)

Section (A)(1) provides for personal jurisdiction as to a cause of action arising from the defendant or the defendant's agent transacting any business in Ohio. The Supreme Court of Ohio has indicated that Section (A)(1) is "very broadly worded and permit[s] jurisdiction over

nonresident defendants who are transacting any business in Ohio." *Genesis Insurance Co. v. Alfi*, 425 F. Supp.2d 876, 894 (S.D. Ohio 2006) (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477 (Ohio 1990), *cert. denied*, 499 U.S. 975 (1991)). The Ohio Supreme Court has also indicated that the word "transact" means "to carry on business," and "to have dealings," and it is broader than the word "contract." *Kentucky Oaks*, 559 N.E.2d at 480. Further, when analyzing Section (A)(1), the court has no better guideline than the wording of Section (A)(1) and must rely upon a case-by-case determination. *Genesis*, 425 F.Supp.2d at 894. However, the mere existence of a contract or the mere solicitation of business in Ohio is insufficient to confer jurisdiction under section (A)(1). *Burnshire*, 198 Fed. App'x at 431-32. There must be ongoing, substantive contacts. *Id.*

Factors To Be Considered

Courts have considered two factors to help determine whether a non resident defendant "transacted business" within the meaning of Ohio's long-arm statute. *Shaker Construction*, 2008 WL 4346777 at * 3. The first factor is whether the non resident defendant initiated the business dealing. *Id.*(citing *Paglioni & Assoc., Inc. v. Winnercomm, Inc.*, No. 2:06-cv-276, 2007 WL 852055 at *9 (S.D. Ohio Mar. 16, 2007)). If the non resident reached out to the plaintiff in Ohio to create a business relationship, the non resident transacted business in Ohio. *Id.*

However, the question of who initiates the contact is but one factor to be considered and the determination is not always dependent upon who initiates the contact. *Military Supply, Inc. v. Reynosa Construction, Inc.*, No. 19326, 2000 WL 109783 at n.3 (Ohio Ct. App. Jan. 26, 2000). The balance of the evidence must be considered to determine in which jurisdiction the parties undertook their discussions and communications and on what terms. *Ricker v. Fraza/Forklifts of*

*Detroit*, 828 N.E.2d 205, 209 (Ohio Ct. App. 2005). With regard to "reaching out," as a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state. *Benjamin v. KPMG Barbados*, No. 03AP-1276, 2005 Ohio App. LEXIS 1860 at *P48 (Ohio Ct. App. Apr. 28, 2005).

The second factor to be considered is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio. *Shaker Construction*, 2008 WL 4346777 at * 3. If the parties negotiated in Ohio with provisions affecting Ohio, the non resident transacted business in Ohio. *Id.* However, merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute "transacting business." "Rather, there must additionally be some continuing obligation that connects the non resident defendant to the state or some terms of the agreement that affect the state." *Id.* (citing *Kentucky Oaks Mall*, 559 N.E.2d at 480).

<u>Examples</u>

Courts have found personal jurisdiction pursuant to section (A)(1) in a variety of circumstances. For example, section (A)(1) provides jurisdiction over an out-of-state defendant who breached a surety agreement that he had negotiated with an individual who was an Ohio resident when the surety agreement was negotiated and executed. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998), *cert. denied*, 525 U.S. 810 (1998). Section (A)(1) provides jurisdiction over former officers and directors of a non-Ohio corporation that carried on business on a regular basis with and attempted to obtain settlement and defense funds from an Ohio insurance company. *Genesis*, 425 F.Supp.2d at 895. Section (A)(1) provides jurisdiction over a non

resident who solicited business in Ohio and shipped goods to Ohio. *U.S. Sprint Communications Company Limited Partnership v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994). Section (A)(1) provides jurisdiction over out-of-state general partners, various general and limited partnerships and a CPA firm where the general partners regularly solicited Ohio residents to invest in limited partnerships, received funds from Ohio investors, regularly disseminated financial information to Ohio investors and conducted routine business in Ohio. *Goldstein v. Christiansen*, 638 N.E.2d 541, 544-45 (Ohio 1994). Section (A)(1) provides jurisdiction over a commercial non resident lessee where the lessee negotiated and, through the course of dealing, became obligated to make payments to its lessor in Ohio. *Kentucy Oaks Mall*, 559 N.E.2d at 480. Section (A)(1) provides jurisdiction over a foreign tobacco company whose American distributor provided an established distribution channel that included tobacco sales in Ohio. *State of Ohio ex rel. Attorney General v. Grand Tobacco*, No. 05AP-213, 2007 WL 275717 at *4-5 (Ohio Ct. App. Feb. 1, 2007). Section (A)(1) provides jurisdiction where a vehicle being sold to an Ohio resident was located in the non resident's state and the vehicle was picked up in the non resident's state but the negotiations and dealings were primarily in Ohio and the non resident defendant regularly conducted business in Ohio. *Muzzin v. Brooks*, 859 N.E.2d 584, 588 (Ohio Ct. App. 2006). Section (A)(1) provides jurisdiction where a non resident client of an Ohio insurance consultant initiated the contact with the Ohio consultant and paid the Ohio consultant at the Ohio consultant's office. *Ricker*, 828 N.E.2d at 209-210. Section (A)(1) provides jurisdiction over a non resident where the non resident initiated business dealings in Ohio, communications took place between the Ohio resident and the non resident sent payments to the Ohio resident's office. *Ricker v. Bobcat of Orlando, Inc.*, No. 04AP-481, 2004 WL 2591244 at *

3 (Ohio Ct. App. Nov. 16, 2004). Finally, section (A)(1) provides jurisdiction over a non resident where the non resident corporation initiated discussions, negotiated a contract and, through the course of business dealings, became obligated to make payments to an Ohio corporation. *Hammill Manufacturing Co. v. Quality Rubber Products, Inc.*, 612 N.E.2d 472, 475 (Ohio Ct. App. 1992).

Courts have also found that personal jurisdiction pursuant to Section (A)(1) does not exist in a variety of circumstances. For example, Section (A)(1) does not provide jurisdiction where the non resident sold three products to an Ohio resident who solicited the sales, and the non resident did not solicit business in Ohio and did not own property in Ohio. *Buflod v. Von Wilhendorf*, LLC, No. CA2006-02-022, 2007 WL 210790 at * 3 (Ohio Ct. App. Jan. 29, 2007). Section (A)(1) does not provide jurisdiction where an off-shore defendant completed auditing services for off-shore affiliates of an Ohio insurance company, directed no correspondence to Ohio, had no contractual relations with persons in Ohio and had no operations in Ohio. *Benjamin,* 2005 Ohio App. LEXIS 1860 at *P48. Section (A)(1) does not provide jurisdiction where the non resident defendant did not initiate the negotiations, where there were no allegations that any negotiations or terms of the agreement affected Ohio and where the project that was the subject of the agreement was not located in Ohio. *Shaker Construction*, 2008 WL 4346777 at *3. Section (A)(1) does not provide jurisdiction where the record does not show which party initiated the business dealings, where there was no evidence to suggest that the discussions and negotiations between the parties occurred in Ohio and where the terms of the alleged contract did not largely affect Ohio because payments to the plaintiff in Ohio was the only connection between the non resident and the Ohio plaintiff. *Paglioni,* 2007 WL 852055 at

*9-10. Finally, section (A)(1) does not provide personal jurisdiction where the plaintiff initiated the contacts, where the non resident was not based in Ohio and had no agents or real property in Ohio and where the work performed was not in Ohio even though there were continuing communications between the non resident and the plaintiff located in Ohio. *Military Supply*, 2000 WL 109783 at *3.

In general, some or all of several factors were present when Section (A)(1) conferred jurisdiction. Among them are a distribution channel with sales in Ohio, a non resident who actively seeks sales in Ohio or initiates contacts in Ohio, goods shipped to Ohio, negotiations and dealings that took place primarily in Ohio and payment to an Ohio resident's address for services rendered. Factors present when personal jurisdiction, pursuant to Section (A)(1), was not conferred include isolated transactions where the non resident did not regularly conduct business in Ohio, where a non resident had no contractual relations with Ohio residents, where the non resident did not initiate contacts in Ohio, where the non resident had no operations in Ohio, where the project that was the subject of the dispute was not located in Ohio, and where the terms of the agreement did not affect Ohio.

## Analysis

Some of the jurisdictional evidence in this case, when viewed in a light most favorable to Katz, weighs toward finding that this Court has personal jurisdiction over the Defendants. Meli and Eisenmann purposefully initiated contact with Katz regarding the Project while Katz was located in Ohio. (V. Compl. ¶¶ 7, 8.) The contact was initiated by calling Katz's home in Ohio.

Eisenmann and Landsman solicited Katz to enter an ongoing business relationship regarding the Project. (V. Compl. ¶ 5.) Katz made it clear that he would work from his home in

Ohio even though he contemplated spending a considerable amount of time working on the Project in New Orleans. (V. Compl. ¶¶ 5, 6.)

Eisenmann and Landsman both knew that Katz was an Ohio resident when they communicated with him regarding the Project. (Katz Decl. ¶ 3.) Finally, Katz sent the earnest money for the Project to Louisiana from an account that he held in Ohio. (V. Compl. ¶¶ 25, 26.)

There is also some jurisdictional evidence, not in dispute, that weighs against this Court having personal jurisdiction over the Defendants. The Project, which is the subject of this litigation, is located in New Orleans, Louisiana. Katz visited New Orleans several times in regard to the Project. (Landsman Decl. ¶ 6.)

During one such visit in August of 2006, Katz met with Landsman to negotiate the proposed business transaction regarding the Project. (Landsman Decl. ¶ 5.) While in New Orleans, Katz made the decision to enter into an agreement regarding the Project. (Id.) As a result of Katz's involvement in the Project, a Louisiana limited liability company was formed of which Katz was a member. (Landsman Decl. ¶ 6.)

Meli did not intend for Katz to perform work on the Project from Ohio but Katz insisted. Yet, while he intended to do as much work as possible on the Project from his home in Ohio, Katz contemplated spending a considerable amount of time in New Orleans. (V. Compl. ¶ 6.) The proposed operating agreement that Landsman emailed to Katz contemplated that the "company" would pay Katz's moving expenses from Dayton to New Orleans and would pay Katz's rent in New Orleans. (Second Landsman Decl. ¶ 4.)

Eisenmann and Landsman never traveled to Ohio to discuss the Project with Katz. (Eisenmann Decl. ¶ 3, Landsman Decl. ¶ 9.) The discussions took place over the telephone and

via email.

Defendant Meli is a Louisiana LLC which has never had any offices, officers, employees, bank accounts, real or personal property or any other assets in Ohio. (Eisenmann Decl. ¶ 2.) Also, Meli has not sent any agents or employees to Ohio to solicit business. (Id.) In addition, Eisenmann and Landsman have never resided in Ohio or conducted business in Ohio. (Landsman Decl. ¶ 9; Eisenmann Decl. ¶ 3.) Finally neither Eisenmann nor Landsman have bank accounts or real property in Ohio. (Id.)

## Conclusion

Section (A)(1) of Ohio's long-arm statute does not provide for personal jurisdiction over Meli or Eisenmann, in this matter. When viewed in a light most favorable to Katz, the jurisdictional evidence shows that Eisenmann and Landsman initiated the discussions with Katz regarding the Project. However, the discussions that took place while Katz was in Ohio were via telephone and email, both of which are interstate lines of communication. There is no jurisdictional evidence of any other contacts that either Eisenmann, Landsman or Meli had with Ohio regarding the Project.

The Project that is the subject of this litigation, is located in New Orleans, Louisiana. Katz visited New Orleans several times regarding the Project and made the decision to become involved while in New Orleans. Further, Katz contemplated spending at least some time in New Orleans to work on the Project. Also, the limited liability company formed to effectuate the Project is organized under the laws of Louisiana. Finally, there is no continuing obligation that connects the Defendants to Ohio or terms of an agreement that affect Ohio.

In sum, the jurisdictional evidence, when viewed in a light most favorable to Katz, does

not show that Meli and Eisenmann, the Defendants, transacted any business in Ohio regarding the Project in accordance with the governing law. Katz has not made a prima facie showing that the Defendants are subject to Ohio's long-arm statute.

## CONSTITUTIONAL DUE PROCESS

The determination of whether personal jurisdiction over Meli and Eisenmann exists is a two step process. First, the court determines if personal jurisdiction exists under Ohio's long-arm statute. If so, the court determines if personal jurisdiction comports with the Due Process Clause of the U.S. Constitution.

In this case, when the jurisdictional evidence is viewed in a light most favorable to Katz, Katz has not made a prima facie showing that this Court has personal jurisdiction over Meli and Eisenmann pursuant to Ohio's long-arm statute. Therefore, this Court need not and does not consider whether personal jurisdiction over Meli and Eisenmann comports with the Due Process Clause of the U.S. Constitution.

## SUMMARY

Katz has the burden of making a prima facie case that the exercise by this Court of personal jurisdiction over Meli and Eisenmann is authorized by Ohio's long-arm statute, Ohio Rev. Code § 2307.382, and that the exercise of personal jurisdiction by this Court over Meli and Eisenmann comports with the Due Process Clause of the U.S. Constitution. When the jurisdictional evidence before the Court is viewed in a light most favorable to Katz, Katz has not met his burden.

Katz alleges that Meli and Eisenmann are subject to personal jurisdiction under section (A)(1) of Ohio's long-arm statute. Based upon the jurisdictional evidence that is before the Court

and viewed in a light most favorable to Katz, Meli and Eisenmann are not subject to personal jurisdiction under Section (A)(1) because they did not transact business in Ohio.

Since Katz has not shown that Meli and Eisenmann are subject to personal jurisdiction under Ohio's long-arm statute, this Court need not and has not considered whether personal jurisdiction over Meli and Eisenmann comports with the Due Process Clause of the U.S. Constitution. The Defendants' Motion To Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is GRANTED. Katz's claim against Meli and Eisenmann is DISMISSED. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this Ninth day of January, 2009.

                                            **s/Thomas M. Rose**
                                        _____
                                        THOMAS M. ROSE
                                      UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record